AO 242 (Rev. 09/17) Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

# UNITED STATES DISTRICT COURT
for the

MARCUS CHOICE WILLIAMS
A/K/A AYANA SATYAGRAHI
_____
Petitioner

v.

DAN SPROUL, Warden
_____
Respondent
(name of warden or authorized person having custody of petitioner)

)
)
)
)
)
)
)
)
)

Case No. 20-1101-JPG
(Supplied by Clerk of Court)

## PETITION FOR A WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241
### Personal Information

1.  (a) Your full name: Marcus Choice Williams
    (b) Other names you have used: Ayana Satyagrahi

2.  Place of confinement:
    (a) Name of institution: United States Penitentiary Marion
    (b) Address: PO Box 1000
       Marion, Illinois 62959
    (c) Your identification number: 43636-279

3.  Are you currently being held on orders by:
    ☒ Federal authorities     ☐ State authorities     ☐ Other - explain:
    _____

4.  Are you currently:

    ☐ A pretrial detainee (waiting for trial on criminal charges)

    ☒ Serving a sentence (incarceration, parole, probation, etc.) after having been convicted of a crime

    If you are currently serving a sentence, provide:
    (a) Name and location of court that sentenced you: N. Dist of Texas, Dallas Division

    (b) Docket number of criminal case: 3:09-cr-145-N (01)
    (c) Date of sentencing: 3/19/2012

    ☐ Being held on an immigration charge

    ☐ Other (explain): _____
    _____
    _____

### Decision or Action You Are Challenging

5.  What are you challenging in this petition:

    ☐ How your sentence is being carried out, calculated, or credited by prison or parole authorities (for example, revocation or calculation of good time credits)

AO 242 (Rev. 09/17)  Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

☐ Pretrial detention
☐ Immigration detention
☐ Detainer
☐ The validity of your conviction or sentence as imposed (for example, sentence beyond the statutory maximum or improperly calculated under the sentencing guidelines)
☒ Disciplinary proceedings
☐ Other *(explain)*: _____

6.   Provide more information about the decision or action you are challenging:

(a)  Name and location of the agency or court: *FCI Beaumont Low*

(b)  Docket number, case number, or opinion number: *3200950*

(c)  Decision or action you are challenging *(for disciplinary proceedings, specify the penalties imposed)*:
*Finding of Guilt by DHO for Code 203, Threatening Another with Bodily Harm and resulting loss of GCT.*

(d)  Date of the decision or action: *4/3/2019*

### Your Earlier Challenges of the Decision or Action

7.   **First appeal**

Did you appeal the decision, file a grievance, or seek an administrative remedy?
☒ Yes          ☐ No

(a)  If "Yes," provide:

(1)  Name of the authority, agency, or court: *Regional Appeal, Regional Office BOP*

(2)  Date of filing: *1/17/2019*

(3)  Docket number, case number, or opinion number: *965370-R1*

(4)  Result: *Remand For Rehearing*

(5)  Date of result: *3/15/2019*

(6)  Issues raised: *DUE PROCESS*

(b)  If you answered "No," explain why you did not appeal: *N/A*

8.   **Second appeal**

After the first appeal, did you file a second appeal to a higher authority, agency, or court?
☒ Yes          ☐ No

AO 242 (Rev. 09/17) Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

(a) If "Yes," provide:

    (1) Name of the authority, agency, or court: *North Central Regional Appeal of Rehearing, N.C. Region Office of BOP*

    (2) Date of filing: *June 25, 2019*

    (3) Docket number, case number, or opinion number: *978875-R2*

    (4) Result: *Appeal Denied*

    (5) Date of result: *7/2/2019*

    (6) Issues raised: *1. No Psych Evaluation*
*2. Unfair UDC*
*3. Unfair DHO - Not Impartial*

(b) If you answered "No," explain why you did not file a second appeal: *N/A*

9.  **Third appeal**

    After the second appeal, did you file a third appeal to a higher authority, agency, or court?

    ☒ Yes        ☐ No

    (a) If "Yes," provide:

        (1) Name of the authority, agency, or court: *BOP Central Office, National Inmate Appeals*

        (2) Date of filing: *8/21/2019*

        (3) Docket number, case number, or opinion number: *978875-A1*

        (4) Result: *Appeal Denied*

        (5) Date of result: *9/27/2019*

        (6) Issues raised: *1. Due Process   2. Denied Favorable Evidence*
*3. Denied Material Witness*

    (b) If you answered "No," explain why you did not file a third appeal: *N/A*

10.  **Motion under 28 U.S.C. § 2255**

    In this petition, are you challenging the validity of your conviction or sentence as imposed?

    ☐ Yes        ☒ No

    If "Yes," answer the following:

    (a)    Have you already filed a motion under 28 U.S.C. § 2255 that challenged this conviction or sentence?

        ☐ Yes        ☐ No

AO 242 (Rev. 09/17)  Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

If "Yes," provide:

(1) Name of court:

(2) Case number:

(3) Date of filing:

(4) Result:

(5) Date of result:

(6) Issues raised:

(b)  Have you ever filed a motion in a United States Court of Appeals under 28 U.S.C. § 2244(b)(3)(A), seeking permission to file a second or successive Section 2255 motion to challenge this conviction or sentence?

☐ Yes            ☐ No

If "Yes," provide:

(1) Name of court:

(2) Case number:

(3) Date of filing:

(4) Result:

(5) Date of result:

(6) Issues raised:

(c)  Explain why the remedy under 28 U.S.C. § 2255 is inadequate or ineffective to challenge your conviction or sentence:  *The proper vehicle of relief for disciplinary hearings and GCT issues is § 2241.*

11.  **Appeals of immigration proceedings**

Does this case concern immigration proceedings?

☐ Yes            ☒ No

If "Yes," provide:

(a)  Date you were taken into immigration custody:

(b)  Date of the removal or reinstatement order:

(c)  Did you file an appeal with the Board of Immigration Appeals?

☐ Yes            ☐ No

AO 242 (Rev. 09/17) Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

If "Yes," provide:

(1) Date of filing: _____

(2) Case number: _____

(3) Result: _____

(4) Date of result: _____

(5) Issues raised: _____

_____

_____

_____

_____

(d)   Did you appeal the decision to the United States Court of Appeals?

☐ Yes                    ☐ No

If "Yes," provide:

(1) Name of court: _____

(2) Date of filing: _____

(3) Case number: _____

(4) Result: _____

(5) Date of result: _____

(6) Issues raised: _____

_____

_____

_____

12.   **Other appeals**

Other than the appeals you listed above, have you filed any other petition, application, or motion about the issues raised in this petition?

☐ Yes            ☒ No

If "Yes," provide:

(a) Kind of petition, motion, or application: _____

(b) Name of the authority, agency, or court: _____

_____

(c) Date of filing: _____

(d) Docket number, case number, or opinion number: _____

(e) Result: _____

(f) Date of result: _____

(g) Issues raised: _____

_____

_____

_____

AO 242 (Rev. 09/17)  Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

## Grounds for Your Challenge in This Petition

13.   State every ground (reason) that supports your claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the facts supporting each ground. Any legal arguments must be submitted in a separate memorandum.

**GROUND ONE:** 1. DHO did Not have "some Evidence" 2. DHO did Not apply "The Greater Weight" STANDARD 3. STAFF Rep. was ineffective; failed to gather relevant Evidence 4. DHO should have continued hearing, and sought psych Evaluation by specialist                    (Due Process Violations)

(a) Supporting facts *(Be brief. Do not cite cases or law.)*:

(SEE MEMORANDUM)

(b) Did you present Ground One in all appeals that were available to you?
☒ Yes          ☐ No

**GROUND TWO:**

(a) Supporting facts *(Be brief. Do not cite cases or law.)*:

(b) Did you present Ground Two in all appeals that were available to you?
☐ Yes          ☐ No

**GROUND THREE:**

(a) Supporting facts *(Be brief. Do not cite cases or law.)*:

(b) Did you present Ground Three in all appeals that were available to you?
☐ Yes          ☐ No

AO 242 (Rev. 09/17)  Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

**GROUND FOUR:**

(a)  Supporting facts *(Be brief.  Do not cite cases or law.):*

(b)  Did you present Ground Four in all appeals that were available to you?

☐ Yes                    ☐ No

14.    If there are any grounds that you did not present in all appeals that were available to you, explain why you did not:

**Request for Relief**

15.  State exactly what you want the court to do:

Reinstate 27 days loss of GCT, order the case be expunged, or alternatively any relief this court deems just and/or proper.

AO 242 (Rev. 09/17) Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

## Declaration Under Penalty Of Perjury

If you are incarcerated, on what date did you place this petition in the prison mail system:

X   10/15/2020

I declare under penalty of perjury that I am the petitioner, I have read this petition or had it read to me, and the information in this petition is true and correct.  I understand that a false statement of a material fact may serve as the basis for prosecution for perjury.

Date:   X   10/15/2020

X   *M.C.L* / ayama satyagushi
_____
*Signature of Petitioner*

_____
*Signature of Attorney or other authorized person, if any*



**U.S. Department of Justice**
Federal Bureau of Prisons

*United States Penitentiary*

_____

*Marion, IL 62959*

April 7, 2020

MEMORANDUM FOR  TO WHOM IT MAY CONCERN

FROM:         S. Byram, Unit Manager

SUBJECT:      **WILLIAMS, MARCUS #43636-279**

This is to verify that Marcus Williams is confined at the United States Penitentiary (USP) in Marion, Illinois.   He has been incarcerated since October 1, 2010 with a projected release date currently scheduled for October 25, 2035. He has requested my assistance in verifying his incarceration status.   He is being provided this memo to use for his legal work.

Our records provide the following information:

Date of Birth: June 10, 1974
Current Address: Marcus Williams #43636-279
            USP Marion
            P.O. Box 1000
            Marion, IL 62959



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

MARCUS CHOICE WILLIAMS
A/K/A AYANA SATYAGRAHI,
Petitioner,

v.                                      Habeas No. _____

D. SPROUL, Warden,
Respondent.

# MEMORANDUM OF LAW

    Plaintiff Petitioner, Marcus Choice Williams, a/k/a "Ayana Satyagrahi", respectfully
submits this Memorandum of Law in support of her Petition For a Writ of Habeas Corpus
(28 USC § 2241).    The Petitioner alleges that (1) the Disciplinary
Hearing Officer (DHO) did not have "some evidence" to find the
Petitioner guilty of a Code 203 violation, "Threatening Another With
Bodily Harm;" (2) the DHO erred by not applying the greater weight
of standard, (3) a DHO hearing was held without the Petitioner being
appointed a staff representative, to locate and interview witnesses,
and (4) the DHO hearing should have been continued so that the Pet-
itioner's  mental capacity could be analyzed by a mental health
professional.  Due to these failures by the DHO, Petitioner asks
this Court to overturn that tribunal's decision and restore the lost
good-time credits.

1.

## I.      BACKGROUND

*Plaintiff Petitioner*    Federal Register Number 43636-279, is currently serving a 360-month sentence for sex-trafficking offenses.  *Petitioner* is currently incarcerated at the United States Penitentiary in Marion, Illinois, and has a projected release date of October 25, 2035 via Good Conduct time.  Prior to being transferred to USP Marion, *Petitioner* was housed at the Federal Correctional Center in Beaumont, Texas (FCC Beaumont).

*Petitioner* , who is a transgender inmate, suffers from gender dysphoria, *bi-polar schizo-affective and borderline disorders. Petitioner* presents himself as a woman by means of both dress and demeanor.  Due to *her* suffering from gender dysphoria, he was issued a Visual Search Card at Beaumont low-security prison.  The card was stripped from *her* upon his arrival at the Beaumont medium-security facility. *Petitioner* appealed this action through an administrative appeal. *Petitioner* also filed numerous additional complaints while housed at FCC Beaumont. Among those complaints, *Petitioner* filed formal appeals regarding the facilitiy's lack of female commissary items as well as female clothing.

*Petitioner*, who has a history of sexual victimization while in prison, also requested to be moved closer to the Housing Unit's Officer's office for fear of being victimized yet again.  On December 2, 2018, *Petitioner* was placed in Beaumont's Special Housing Unit (SHU) for filing a complaint concerning a hole in the dry wall in one of the shower stalls in *Petitioner's* assigned housing unit. *Petitioner* 's main concern regarding the hole in the shower stall's wall was that another inmate could climb in the hole and watch the Petitioner showering.  The prison's Administers claimed that *Petitioner* was in

2.

the SHU pending an inmate safety assessment.

Upon *Petitioner*'s arrival in the SHU, he was stripped of all prison-issued clothing, which included prison-issued undergarments. The officers assigned to the SHU attempted to issue *Petitioner* male boxers to wear, but *she* refused to accept them and asked for the officer to have the prison's clothing room issue the undergarments that all transgender inmates wear.

On December 10, 2018, *Petitioner* was issued an Incident Report for prohibited act Code 203; Threatening Another With Bodily Harm, for allegedly shouting derogatory expletives at Correction Officer Sowell. *Petitioner's* first DHO hearing was held on December 19, 2018, where *Petitioner* was found guilty of the charged offense. *Petitioner* subsequently appealed the DHO's decision, on the ground that he was not allowed to call witnesses and that this violated *her* procedureal due process rights. This appeal was granted and *Petitioner* was afforded a second hearing.

Prior to *Petitioner*'s second DHO hearing, Petitioner was given notice of the charges and was asked whether a staff representative was needed/wanted and whether there existed viable witnesses. *Petitioner* requested a staff representative at the hearing, but *could not call them due to her being locked in FCI Beaumont Low SHU cell and ineffective rep.; therefore she* refused to sign the Notice of Disciplinary Hearing form.

On April 3, 2019, the DHO's rehearing was held devoid of a staff representative and witnesses. Again, *Petitioner* was found guilty of the charges against him.

*Petitioner* then appealed the DHO decision, and was denied at every level of the administrative appeal process. *Petitioner*'s final appeal

was received on October 9, 2019.

## II.    LEGAL STANDARDS

To obtain habeas corpus relief, an inmate must demonstrate that he or she is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C § 2241(c)(3).  A petition seeking habeas corpus relief is appropriate under § 2241 when challenging the fact or duration of a prisoner's confinement. <u>Preiser v. Rodriguez</u> 411 U.S. 475, 490 (1973).  A federal prisoner has a constitutionally protected liberty interest in [her] earned good-conduct time. See <u>Brown v. Smith</u>, 828 F.2d 1493, 1494 (10th Cir. 1987).  Thus, federal inmates must be afforded due process before any of their good time credits - in which they have a liberty interest - can be revoked." <u>Jones v. Cross</u>, 637 F.3d 841, 845 (7th Cir. 2011). With respect to procedural due process concerns, it is well established that "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." <u>Wolff v. McDonnell</u>, 418 U.S. 539, 556 (1974).

In <u>Wolff</u>, the Supreme Court held that in order to satisfy due process in a prison disciplinary proceeding, the inmate must receive (1) "advance written notice of the claimed violation," no less than 24 hours prior to the hearing; (2) an opportunity "to call witnesses and present documentary evidence in his [or her] defense when permitting him [or her] to do so will not be unduly hazardous to institutional safety or correctional goals;" and (3) a "written

4.

statement of the factfinders as to the evidence relied upon and the reasons for the disciplinary action taken." Wolff, 418 418 U.S. at 563-566.

The Supreme Court subsequently added that when "some evidence" supports the decision to revoke good time credits, the requirements of procedural due process have been met. Walpole v. Hill, 472 U.S. 445, 454 (1985).  Due process also requires that a prison disciplinary tribunal be sufficiently impartial. Myers v. Alldredge, 492 F.2d 296, 305-07 (3rd Cir. 1974).  The Seventh Circuit has confirmed that there may be circumstances in which a denial of a prisoner's request for a continuance of a disciplinary hearing, so that the prisoner may identify witnesses on his or her behalf, violates due process. Davis v. Lane, 814 F.2d 397, 402 (7th Cir. 1987).

In the federal prison system, the Bureau of Prisons has, by regulation, adopted specific guidelines for inmate discipline procedures which are set forth at 28 C.F.R. § 541.10 et. seg.  These guidelines are specifically tailored and designed to meet the due process requirements outlined by the Supreme Court in Wolff.  Under these regulations, when prison staff has reason to believe that a prohibited act has been committed by an inmate, an incident report must be prepared and referred for investigation. 28 C.F.R. § 541.14. After investigation, the incident report is referred to a Unit Disciplinary Committee (UDC) for initial hearing. 28 C.F.R. § 541.15. The inmate in turn is entitled to notice of any proposed violation. The UDC may either reach a finding regarding whether a prohibited act was committed, or refer the case to the DHO for further hearing. 28 C.F.R. § 541.15(f).  The DHO then has the authority to dismiss

5.

any charge, to find a prohibited act was committed, and to impose
any available sanction for the act. 28 C.F.R. § 541.18.  The DHO
hearing is conducted pursuant to the procedures set forth at 28 C.F.R.
§ 541.17.

Throughout this hearing process the inmate is provided with a
series of procedural rights.  For example, the inmate is entitled to
notice of the alleged infraction.  Specifically, the Warden must
give the inmate advance written notice of the charges no less than
24 hours before the DHO hearing. 28 C.F.R. § 541.17(a).  The inmate
is also entitled to assistance at DHO hearings. In particular, the
Warden must provide the inmate with a full time staff member to
represent [her] at the DHO hearing. 28 C.F.R. § 541.17(b).

The inmate also has a series of procedural rights at the hearing
itself.  Thus, at the DHO hearing, the inmate is entitled to make a
statement and present documentary evidence.  The inmate also has the
right to submit names of requested witnesses and have them called to
testify and to present documents.  While the DHO need not call
repetitive witnesses or adverse witnesses, 28 C.F.R. § 541.17(c), the
DHO shall call those witnesses who have information directly rele-
vant to the charges and who are reasonably available.  The inmate
has the right to be present throughout the DHO hearing except during
deliberation or when institutional security would be jeopardized. 28
C.F.R. § 541.17(d).

In addition, the regulations prescribe procedural standards for
DHO decision-making.  Thus, the regulations require that the DHO
must consider all evidence presented at the hearing.  The decision
of the DHO must be based on the facts presented, and if there is

6.

conflicting evidence, it must be based on the greater weight of the evidence. 28 C.F.R. § 541.17(f).  Finally, the DHO must prepare a record of the proceedings.  This record must be sufficient to document the advisement of inmate rights, the DHO's findings, the DHO's decision and the specific evidence relied upon by the DHO.  The record must include a brief statement of the reasons for the sanction imposed.  A copy of this record must be delivered to the inmate, ordinarily within 10 days of the hearing. 28 C.F.R. § 541.17(g).

III.    ARGUMENT

Prison can often be a cold and lonely place.  Aside from being estranged from one's family and loved ones, prisoners can become the victims of assault, both sexual and physical.  Prisoners can also be the  recipients of verbal threats and harassment from both prison staff and inmates.  For a *transgender female inmate whose relegated to living her life as a woman in a MEN's prison*   , these threats to well being are often times far worse than those of other prisoners.  Aside from being viewed as a pariah by other inmates, transgender inmates are also denied the dignities and rights afforded them by the United States Constitution.

*The Petitioner*   is one such prisoner.  Upon *Petitioner*'s arrival at FCI Beaumont, the mistreatment by both other inmates and prison staff was immediate.  In response to this perceived mistreatment, *Petitioner* filed numerous administrative remedies and civil suits in an attempt to alleviate some of the difficulties that make prison a traumatic experience.  As a result of these filings, or better yet,

7.

in retaliation to these filings, *Petitioner* was placed into Beaumont's Special Housing Unit (SHU), by prison staff for *Petitioner* 's "protection".

While in the SHU, *Petitioner* encountered another hardship not a stranger to many transgender inmates.  By now, it is well established that transgender inmates are provided gender affirming clothing and undergarments upon their arrival at federally controlled facilities. *Petitioner* was issued such clothing upon arrival at Beaumont but was stripped of them upon placement in the SHU.  After arriving in the SHU, *Petitioner* both informally and formally requested that female undergarments be issued.  These requests were ignored.  Thus, the events surrounding the event in question transpired.  Correctional Officer (CO) S. Sowell was doing his hourly rounds on the 400 range of Beaumont's SHU, when *Petitioner* asked politely to be issued female undergarments.  Sowell says that he responded that he "would look into it."  Sowell does not say in what manner of tone his response was delivered.  Nor does Sowell state whether *Petitioner* immediately responded, or if what Sowell alleges is said while he and *Petitioner* are face-to-face or as he is leaving the range.

*Petitioner* alleges, as has been alleged from the onset, that he never uttered a word of malice or disrespect towards Sowell, but *Petitioner* does acknowledge that he did hear another unidentified inmate spew some vile remarks towards CO Sowell. *Petitioner* maintains that these comments were said after Sowell had departed from in front of *her* cell, and as Sowell was exiting the range.  There is nothing in Sowell's report that contradicts this sequence of events outright.

8.

A.  The Some Evidence Standard

The DHO's decision need only be supported by "some evidence in the record." Webb v. Anderson, 224 F.3d 649, 652 (7th Cir. 2000). The Seventh Circuit has characterized the "some evidence" standard as a "meager threshold." Scruggs v. Jordan, 485 F.3d 934, 941 (7th Cir. 2007).  The Seventh Circuit applies a "lenient standard" in reviewing the sufficiency of the evidence supporting a disciplinary conviction, asking "whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." Webb, 224 F.3d at 652.  Although "some evidence" is not a rigorous standard, "the evidence before the disciplinary board must point to the accused's guilt." Hamilton v. O'Leary, 976 F.2d 341, 346 (7th Cir. 1992).

Petitioner believes that the "some evidence" standard is not met based upon CO Sowell's report.  The report is devoid of any evidence or indication that Petitioner made the comments in question to Sowell's face, or that Sowell witnessed Petioner mouth the words.  While it is clear that Sowell heard what he believed to be Petitioner's voice, Sowell was in fact wrong - one of the many other inmates housed on the 400 Range made those comments.  Moreover, there is no clear indication in the record to reflect whether Sowell heard the comments while exiting the range and automatically attributed them to Petitioner .  Without any documentation or testimony to show when these comments were made, the DHO was left to speculate.  Hence, as the Seventh Circuit did in Castro v. Hastings, 74 Fed. Appx. 607 (7th Cir. 2000), the some evidence standard has not been met and this Court should

9.

exercise its discretion and reverse the DHO's decision and restore
*Petitioner*'s good-time credits.


B.  The Greater Weight Of The Evidence Standard


In reviewing an incident report issued to a federal prisoner,
"[t]he DHO shall consider all evidence presented at hearing.  The
decision of the DHO shall be based on at least some facts, and if
there is conflicting evidence, it must be based on the greater weight
of the evidence." 28 C.F.R. § 541.7(e).  "The phrase 'greater weight
of the evidence' refers to the strength of the evidence, not its
quantity or the number of witnesses testifying." 28 C.F.R. § 541.8
(f)(6).  This regulatory provision indicates that this Court may
require more than "some evidence" required by Superintendent v. Hill,
472 U.S. 445 (1985): if there is conflicting evidence, the DHO's
decision must be based on the "greater weight of the evidence."

*Petitioner*  attests that the greater weight of the evidence standard
is the standard which the DHO should have employed in deciding her
case. *Petitioner* attempted to have witnesses called to testify at the
DHO hearing, however was prevented from doing so.  The Staff Repre-
sentative appointed to *Petitioner* refused to identify and locate other
inmates on behalf of *Petitioner* .  In the ordinary prison setting,
*Petitioner* would have been able to identify and locate inmates to
testify on her behalf without the assistance of a staff representa-
tive.  This task is increasingly difficult, if not impossible, when
the incident in question transpires while a prisoner is in the SHU,
where the inmate is locked in her cell 24 hours a day and rarely if

10.

ever sees another prisoner's face.  In situations like this, the staff representative's job becomes more vital.  And in this case the staff representative failed to obtain these witnesses so that *Petitioner* could present conflicting evidence at the DHO hearing, which would have triggered the heightened standard of proof.

   C. *Petitioner*   Is Prejudiced By The Failure Of The DHO To
      Continue The Hearing

*Petitioner*    now posits that the DHO violated <u>Wolff</u> when it did not continue the hearing to a later date so that (1) vital and pertinent inmate witnesses could be identified, interviewed, and called to testify, and (2) a mental health competency interview could have been held.

   1. 28 C.F.R. § 541.8(d)(2) states in pertinent part:

          Prior to the DHO's hearing, the staff representa-
          tive will be available to help you understand the
          incident report charges and potential consequences.
          The staff representative may also assist you by
          speaking with and scheduling witnesses, obtaining
          written statements, and otherwise helping you pre-
          pare evidence for presentation at the DHO's hearing...

   Prior to *Petitioner* 's DHO hearing he was appointed a staff rep-resentative.  Upon being interviewed by the assigned staff repre-sentative, *Petitioner*   was asked if other inmates who were in the SHU and on the 400 range could be located and identified, using the Inmate Registry on the date in question.  The staff representative was unwilling to comply with *Petitioner* 's request.  Subsequently, the representative completed the Notice of Disciplinary Hearing Before the (DHO) form and falsely marked that *Petitioner*   did not intend or

11.

want to call witnesses on her behalf. *Petitioner* refused to sign the form because it did not accurately reflect her requests and wishes. These assertions are reflected in the documented record.

Given that *Petitioner* was not given adequate assistance in identifying and locating these witnesses due to her placement in the SHU, this Court should overturn the DHO's finding and restore *Petitioner* 's good-time credits.

Prior to the DHO hearing, *Petitioner* was assigned SIS Lieutenant Hansen as a staff representative. Lieutenant Hansen was later recused from this assignment due to the fact that he was also one of the staff members who had investigated the incident in question, so he could not serve as a staff representative for *Petitioner* .

This unfortunate mix up left *Petitioner* devoid of a staff representative to (1) assist in interviewing potential witnesses who might have added credence to *Petitioner* 's claim that he was not the one derogatory towards Officer Sowell, and (2) present any documentary evidence before the DHO and to make sure that *Petitioner* 's Procedural Due Process rights were being safeguarded. Given *Petitioner* 's placement in the SHU, adequate representation is undoubtedly vital. *Petitioner* was not at liberty to obtain the names of the orderlies and other inmates assigned to the 400 range, so it would be impossible for her to place the names of witnesses on the form so that they could have been called to testify at the hearing, placing the full name of witnesses on the Notice of Disciplinary Hearing Before the (DHO) form.

*Petitioner* believes that the DHO's hearing should have been continued so that he could have been assigned a replacement staff repre-

12.

sentative.  This failure on the part of the prison staff, left h
bereft of witnesses at the hearing.  A hearing that was held months
subsequent to the incident in light of the dismissal of *Petitioner* 's
original DHO hearing.  The SHU is a temporary housing unit where
inmates are placed because of disciplinary infractions.  Inmates
placed in the SHU remain there for as little as 2-3 weeks and upwards
of 3-6 months, depending on the severity of their infraction.  In
the case at bar, it is believed that the majority of inmates who
were housed on the 400 range had either been returned to General
Population or transferred to other facilities.  These circumstances
made it impossible for *Petitioner* to mount a defense to the charges
without being provided assistance via a staff representative.  As a
result, the DHO hearing should have been continued until such assist-
ance could have been provided.


2.  *Petitioner* further provides that in light of *her* Gender Dys-
phoria diagnosis, which *can manifest as a mental health condition* , and placement
in the SHU, that prior to the DHO's hearing, *she* should have been
interviewed by a mental health professional to gauge both *Petitioner* 's
culpability and mental competence.  Failure to provide for said
interview was a violation of FBOP procedure and prejudiced *Petitioner* .
The FBOP acted in violation of the principle established in <u>Accardi</u>
<u>v. Shaughnessy</u>, 347 U.S. 260 (1954), i.e. that an agency must obey
its own regulations.  The regulations at issue provide:
Non-study Inmates.  If at any stage of the disciplinary process
an inmate appears to staff to be mentally ill, Unit Discipline Com-
mittee (UDC) staff or the Discipline Hearing Officer (DHO) will

13.

consult with psychology staff to determine if an evaluation of com-
petency or responsibility is warranted.  If warranted, the psycho-
logical evaluation is guided by both P.S. 5270.07 (Inmate Discipline
and Special Housing Policy - Chapter 1, Page 2), and the standards
for responsibility and competence addressed in this Program Statement.
It is important to note that psychologists must make every effort to
review all past evaluations on the individual in question and, when
relevant, mental health information from the person's Pre-Sentence
Investigation (PSI).  Although disciplinary evaluations are not
governed by statute, they follow the same general standards as comp-
etency and responsibility (insanity) evaluations, although they may
need to be modified to fit the disciplinary situation.

If it appears you are mentally ill at any stage of the disciplin-
ary process, you will be examined by mental health staff.

(a) Competency to Participate in Disciplinary Proceedings.  If
evidence indicates that you cannot understand the nature of the
disciplinary proceedings, or cannot help in your own defense, disc-
iplinary proceedings may be postponed until you are competent to
participate.  The Unit Disciplinary Committee or Discipline Hearing
Officer will make the decision based on evidence, including evidence
presented by mental health staff.

(b) Responsibility for Conduct.  You will not be disciplined for
conduct committed when, as the result of a severe mental disease or
defect, you were unable to appreciate the nature and quality, or
wrongfulness of the act.  The UDC or DHO will make this decision
based on evidence, including evidence presented by mental health
staff. 28 C.F.R. § 541.6.

14.

i. First, this Court must determine whether Gender Dysphoria is in fact a mental illness. Several courts, including the Seventh Circuit, have acknowledged that Gender Dysphoria is a serious psychiatric disorder. See Maggert v. Hanks, 131 F.3d 670 (7th Cir. 1997); Morris v. Clay, 2019 U.S. Dist. LEXIS 28880 (W.D. Vir. Feb. 25, 2019); Norsworthy v. Beard, 87 F. Supp. 3d 1164, 1178 (N.D. Cal. Apr. 2, 2015).

Second, this Court must determine whether Petitioner suffers from Gender Dysphoria. Petitioner has the physical appearance of a female, has been issued feminine-styled clothing via the FBOP, has filed a myriad of Administrative Remedies concerning gender-affirming commissary items and transgender rights, undoubtedly suffering from Gender Dysphoria. Petitioner is also Bipolar and Borderline Personality disorders.

ii. Having established that Gender Dysphoria is a serious mental illness and that Petitioner does suffer from it, Petitioner believes that her mental health should have been assessed in connection to and prior to her DHO hearing. Petitioner believes that her placement in the SHU only served to exacerbate her mental conditions, which may have caused her to lash out at CO Sowell and not recall this event. Prisoners placed in solitary confinement often times suffer from what is referred to as SHU Syndrome.

Solitary confinement is punishment taken to the extreme. It induces the bleakest depression, plunging despair, and terrifying hallucinations. The Mental Health Department looms large in these units, doling out antidepressants, antipsychotics, and mountains of sleeping pills. If these inmates didn't have mental health issues

15.

before they entered solitary, they do now.  But even the most potent medications can only do so much, and when they give out - when human behavior deteriorates into frantic scenes of self-mutilation and makeshift nooses - we're called to a cell door. Mary E. Buser, Lockdown on Rikers: Shocking Stories of Abuse and Injustice at New York's Notorious Jail viii (2015).

It is well established that "time served in solitary confinement can lead to serious mental illness in healthy individuals.  It significantly exacerbates the condition of those already suffering from emotional instabilities." Id. at 91; see also Stuart Grassian, Psychiatric Effects of Solitary Confinement, 22 WASH. U. J.L. & POL'Y 325, 333-38 (2006)(discussing the various adverse effects of solitary confinement on an individual); Alex Kozinski, Worse than Death, 125 Yale L.J. F. 230 (2016)(describing the conditions of solitary confinement and the need for reform); Reginald Dwayne Betts, Only Once I Thought About Suicide, 125 Yale L.J. F. 222 (2016)(giving a personal account of the adverse effects of solitary confinement); The Liman Program, Yale Law School & Association of State Correctional Administrators, Time-in-Cell: The Asca-Liman 2014 National Survey of Administrative Segregation in Prison 3 (2015)(estimating that between 80,000 and 100,000 people were in isolation in prisons in 2014).

Confinement in solitary is known to cause psychiatric morbidity, disability, suffering and mortality.  Prisoners in segregated housing units who have no history of serious mental illness and who are not prone to psychiatric decompensation (breakdown) often develop a constellation of symptoms known as "[Segregated Housing Unit] Syn-

drome."  Although SHU Syndrome is not an officially recognized diag-
nostic category, it is made up of official diagnoses such as paranoid
delusional disorder, dissociative disorder, schizophrenia and panic
disorder.  The extremely isolating conditions in supermaximum con-
finement cause SHU Syndrome in relatively healthy prisoners who have
histories of serious mental illness, as well as prisoners who have
never suffered a breakdown in the past but are prone to break down
when the stress and trauma become exceptionally severe.  Many prison-
ers are not capable of maintaining their sanity in such an extreme
and stressful environment; a high number attempt suicide.

  "In the last few years, legislation in some jurisdictions, class
action settlements, and policies in the federal prison system and in
some states have prohibited or limited correctional facilities'
authority to put seriously mental ill individuals in restrictive
housing." Association of State Correctional Administrators & The
Arthur Liman Public Interest Program, Yale Law School, Aiming to
Reduce Time-in-Cell: Reports From Correctional Systems on The Numbers
of Prisoners in Restricted Housing and on the Potential of Policy
Changes to Bring About Reforms 48 (2016)(footnotes omitted); see also
Abigail Q. Cooper, Beyond the Reach of the Constitution: A New
Approach to Juvenile Solitary Confinement Reform, 50 Colum. J. L. &
Soc. Probs. 343 (2017)(advocating for reform to the practice of
solitary confinement on the state level by Attorneys General).

  Consequently, there exists a high probability that Petitioner .'s
mental health diagnoses played a part in the incident in question.
Thus, it can be argued that prison officials at Beaumont Low should
have considered this prior to deciding Petitioner 's case.  There was

17.

no mental health assessment to determine whether *Petitioner* was competent enough to understand the nature of the disciplinary proceedings, assist in Petitioner's defense, and the responsibility of the conduct at the time of the incident. FBOP policy calls for such an assessment.

In Accardi, the Attorney General circulated to all employees in the immigration service a list of individuals whom he wished to deport, including the petitioner. 347 U.S. at 266-68. The Supreme Court concluded that, assuming the truth of the allegations that the Board of Immigration Appeals ("BIA") based its decision on the Attorney General's list, the BIA ignored regulations requiring it to exercise its own discretion, thereby violating the petitioner's due process rights. Id. at 266-68. Other agency decisions have been reversed by the Supreme Court due to failure to follow the established procedures of the agency. See Serv. v. Dulles, 354 U.S. 363 (1957)(dismissal of State Department employee); Vitarelli v. Seaton, 359 U.S. 535 (1959)(dismissal of employee by Secretary of Interior); Yellin v. United States, 374 U.S. 109 (1963)(criminal contempt initiated by Congressional committee); Morton v. Ruiz, 415 U.S. 199 (1974)(Bureau of Indian Affairs denial of general assistance benefits). These cases were premised on "the fair play concept embodied in the principle that due process of law is required for governmental actions that affect the rights of individuals." Nichols v. Reno, 931 F. Supp. 748, 751 (D. Colo. 1996). The Seventh Circuit agrees that an agency must adhere to its own rules and regulations when an individual's due process interests are implicated. See Tzarevski v. Ins., 51 Fed. Appx. 995, 999 (7th Cir. 2001).

18.

The Ninth Circuit explained the rationale for the <u>Accardi</u>
principle:

An agency's failure to follow its own regulations "tends to cause
unjust discrimination and deny adequate notice: and consequently may
result in a violation of an individual's constitutional right to due
process. <u>NLRB v. Welcome-American Fertilizer Co.</u>, 443 F.2d 19, 20
(9th Cir. 1971); see also <u>United States v. Newell</u>, 578 F.2d 827, 834
(9th Cir. 1978).  Where a prescribed procedure is intended to protect
the interests of a party before the agency, "even though generous
beyond the requirements that bind such agency, that procedure must
be scrupulously observed." <u>Vitarelli</u>, 359 U.S. at 547 (Frankfurter,
J., concurring); see also <u>Note, Violations by Agencies of Their Own</u>
<u>Regulations</u>, 87 Harv. L. Rev. 629, 630 (1974)(observing that agency
violations of regulations promulgated to provide parties with pro-
cedural safeguards generally have been invalidated by courts).
<u>Sameena Inc. v. United States Air Force</u>, 147 F.3d 1148, 1153 (9th
Cir. 1998).

Having chosen to promulgate a regulation, the agency must follow
that regulation.  The FBOP is not immune to this requirement.  In
<u>Accardi</u>, the Supreme Court granted a habeas petitioner relief for
similar reasons. *Petitioner* was prejudiced by a failure of the FBOP
to follow its own regulations, which is required by the <u>Accardi</u> doc-
trine.  See <u>Mackey v. Federal Bureau of Prisons</u>, 440 F. App'x 373,
374-75 (5th Cir. 2011). *Petitioner* has satisfied the requirement to
have the DHO's decision overturned.

19.

IV.    CONCLUSION

Wherefore, in light of the foregoing reasons, *Petitioner* respectfully requests that this Court reverse the DHO's decision and restore h*er* good conduct credit.

Respectfully submitted,

Dated: October *15*, 2020          /s/ *M.C. Will / A. Satyagah,* (seal)
                                   Marcus Choice Williams, Pro Se
                                   A/K/A Ayana Satyagrahi, USMN: 43636-279
                                   USP Marion, PO Box 1000
                                   Marion, ILLINOIS 62959

## CERTIFICATE OF SERVICE

I certify that, prior to 5:00 p.m. on October *15*, 2020 I placed a true and correct copy of the foregoing Petition for Writ of Habeas Corpus in the U.S. Mail, by way of the Inmate Mailroom at the United States Penitentiary located in Marion, Illinois, in a properly addressed envelope, with first class postage duly paid and affixed to the envelope.

I declare under penalty of perjury that all statements made in the foregoing articles are true and correct and that if called to testify as a witness in this matter, I could and would competently testify to each of the facts set forth within.

This Certification was executed on October *15*, 2020 in Marion, IL 62959.

                                   /s/ *M.C. / A. Satyagah,* (seal)
                                   Marcus Choice Williams, Pro Se
                                   A/K/A Ayana Satyagrahi, USMN: 43636-279
                                   United States Penitentiary
                                   P.O. Box 1000
                                   Marion, IL 62959



CERTIFIED MAIL

7019 2970 0001 7976 2380



(aka ayana satyagrahi)
MARCUS Williams
Reg. No. 43636 - 279
United States Penitentiary
P.O. Box 1000
Marion, IL 62959

CLERK OF COURT
Southern District of ILLINOIS
750 Missouri Ave
East Saint Louis, IL 62301

Earthwise



RECEIVED

OCT 1 9 2020

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS OFFICE



MAIL CLEARED
US MARSHALS