IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

MARCUS CHOICE WILLIAMS,
Petitioner,

v.                                                                Case No. 20–CV–01101–JPG

DAN SPROUL,
Respondent.

**MEMORANDUM & ORDER**

**I.    Introduction**

Before the Court is Petitioner Marcus Choice Williams' a/k/a Ayana Satyagrahi ("Petitioner") Petition for Writ of Habeas Corpus. (Doc. 1). Petitioner is transgender and identifies as a female. She is a federal prisoner currently incarcerated at the U.S. Penitentiary in Marion, Illinois ("USP Marion"), within this District. She brings this collateral attack under 28 U.S.C. § 2241 to challenge the execution of her sentence. Respondent Dan Sproul ("Respondent") filed a response (Doc. 11) and Petitioner replied to Respondent's response (Doc. 31).

**II.   Background**

Petitioner states that in 2018, while an inmate at Federal Correctional Institute Beaumont in Texas, a prison official Senior Officer Steven Sowell "attempted to issue Petitioner male boxers to wear, but she refused to accept them and asked for the officer to have the prison's clothing room issue the undergarments that all transgender inmates wear." (Doc. 1 at 12). Petitioner was housed in the Special Housing Unit ("SHU"). Sowell wrote in his notes that Petitioner stated the following: "you ain't gonna' do nothing for me you fuckin' pussy. When I get out of SHU I'm gonna' whoop your ass you fuckin' cracker.'" (Doc. 11 at 2). Petitioner denied threatening the officer stating, "I only asked for new panties and bras and the officer was very unprofessional…I never stated I was

going to whoop his ass or anything of that nature." (Doc. 11 at 2).  The next week, she "was issued an Incident Report for prohibited act Code 203; Threatening Another With Bodily Harm, for allegedly shouting derogatory expletives at" the prison official."

A hearing was held before the Unit Disciplinary Committee ("UDC") on December 12, 2018, at 9:30 a.m. (Doc. 11 at 3). The matter was referred to the disciplinary hearing officer ("DHO"). Petitioner requested Lt. Kristen Hansen to serve as her staff representative and named Dr. Robert McGarvey to serve as her witness and to testify regarding her state of mind. *Id*. The due process hearing was held on December 19, 2018. On a report from the hearing, a box is checked indicating Petitioner waived her right to call witnesses and there is no explanation why the witnesses did not appear. *Id*. Petitioner stated the following:

> Specifically asked for panties and bra, the officer specifically tried to give me boxers. I told him I don't wear boxers, I don't use those terms and words. I don't talk like that, I've been back here 7 days without clean underwear. Another inmate behind the door said all those things trying to take up for me.

(Doc. 11 at 3; Doc. 31 at 5-6). A DHO found her guilty and revoked 27 days of good-time credit. *Id*. Petitioner appealed the decision of the DHO to the Regional Office of the BOP on January 17, 2019 (Doc. 31 at 6). Her reasoning that there was no documentation in the record indicating she waived her right to have witnesses appear. *Id*. The Regional Director responded to her appeal, remanding the case to the institution for a rehearing because Petitioner "had requested a witness but there was no documentation indicating the inmate waived his right to have the witness appear." (Doc. 11 at 4).

A rehearing of the incident was held before the DHO on April 3, 2019. Petitioner received notice of the rehearing and notice of her rights. Petitioner signed the notice of her rights but refused to sign the notice of the hearing. (Doc. 11, Ex. 1, Att. H at 6). While unsigned, the notice of hearing states Petitioner asked for Case Manager Steven Ray to serve as her staff representative but she

waived her right to call witnesses. (Doc. 11 at 4). Petitioner again denied the charge, stating: "I'm not guilty. I asked for female under clothing and [the officer] started ranting and cursing me out." (Doc. 11 at 4-5). The DHO summarized the findings and stated Mr. Ray stated, "I was mainly asked to get witnesses statement however inmate Williams did not know the names of the inmates nor did inmate Williams know the inmate register numbers therefore no witnesses were called nor statements received during this DHO hearing." (Doc. 11, Ex. 1, Att. H at 2). The DHO again sanctioned Petitioner with 27 days good time credit and suspended telephone and commissary privileges. *Id*. at 5.

After exhausting her administrative remedies, she launched this post-conviction proceeding against Respondent, the warden of USP Marion. *Id*. at 1.

### III.    Applicable Law

A federal inmate may file a § 2241 petition to challenge the revocation of good conduct credit on the grounds that he did not receive due process in connection with that disciplinary decision. *Jones v. Cross*, 637 F.3d 841 (7th Cir. 2011). Although inmates retain due process rights in connection with prison disciplinary proceedings, such proceedings "are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Nevertheless, due process in the prison disciplinary context requires, at a minimum, that the inmate receive:

> (1) written notice of the claimed violation at least 24 hours before hearing; (2) an opportunity to call witnesses and present documentary evidence (when consistent with institutional safety) to an impartial decision-maker; and (3) a written statement by the fact-finder of the evidence relied on and the reasons for the disciplinary action.

*Jones*, 637 F.3d at 845 (citing *Wolff*, 418 U.S. at 563-71; *Scruggs v. Jordan*, 485 F.3d 934, 939 (7th Cir. 2007)).

Due process also requires that there be "some evidence [to] support[ ] the decision ... to revoke good time credit." *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 455 (1985); *see Jones*, 637 F.3d at 845. "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455-56. The evidence to support the disciplinary decision does not need to "logically preclude[ ] any conclusion but the one reached by the disciplinary board." *Id*. at 457.

When an inmate believes he has been deprived of due process by a disciplinary decision that resulted in the loss of good time credit, he must exhaust his administrative remedies before filing a § 2241 petition. Although there is no express exhaustion requirement in § 2241, there is a common-law exhaustion requirement. *Richmond v. Scibana*, 387 F.3d 602, 604 (7th Cir. 2004). The Court may, indeed, require it before it entertains a § 2241 petition. *Sanchez v. Miller*, 792 F.2d 694, 699 (7th Cir. 1986) (holding that "a federal prisoner challenging a disciplinary decision within the federal institution must exhaust his administrative remedies before seeking federal habeas relief").

### A.  Exhaustion of Administrative Remedies

A petitioner must exhaust his administrative remedies before bringing the challenge before the Court before filing this § 2241 petition. The parties agree that Petitioner has exhausted her remedies and the Court agrees.

### B.  Some Evidence Standard

Petitioner argues that the DHO's disciplinary decision was not supported by "some evidence." She states that the Incident Report "is devoid of any evidence or indication that [she]

made the comments in question." *Id*. The applicable standard for this type of claim "is whether there is any evidence in the record that could support the conclusions reached by the disciplinary board." *Superintendent v. Hill*, 472 U.S. 445, 454 (1985). The "some evidence" standard is a low standard, one that can be made on a report alone that can describe the infraction in sufficient detail. *McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999) ("For its decision, the CAB relied on Fields' disciplinary report. That report alone provides "some evidence" for the CAB's decision.").

Petitioner contends that the DHO erred by not applying the heightened "greater weight" standard. When presented with conflicting evidence, DHOs are required to base their disciplinary decision "on the greater weight of the evidence"—as opposed to the lesser "some evidence" standard just described. *See* 28 C.F.R. § 541.7(e). Williams contends that the DHO should have applied the "greater weight" standard, though she admits that she did not actually present any conflicting evidence. Rather, she states that she was *prevented* from presenting conflicting evidence because the "Staff Representative appointed to [her] refused to identify and locate other inmates." (Doc. 1 at 10). This problem, she says, was worsened because she was housed in the prison's SHU, "where the inmate is locked in her cell 24 hours a day and rarely if ever sees another prisoner's face." *Id.* at 10–11.

The Court notes the difficulty of incarcerated individuals being able to oppose or admit evidence in their defense. However, a district court's job at this stage is not to "conduct an examination of the entire record…or weigh the evidence." *McPherson*, 188 F.3d at 786. The Court must simply determine whether the prison disciplinary board's decision has some factual basis. In light of the fact Petitioner failed to provide conflicting evidence, the Court will apply the "some evidence" standard and find that Respondent had some basis for its decision. The DHO report contained sufficient detail to support its conclusions that Petitioner was guilty of the offense of

threatening another with bodily harm.

### C. Whether Petitioner's Due Process was Violated

Petitioner asserts that the DHO violated her right to due process by holding the disciplinary hearing without (1) appointing her a new staff representative and (2) permitting her to present witnesses. Inmates "are entitled to have a staff representative during the DHO hearing process." 28 C.F.R. § 541.8(d). "The staff representative may" assist the inmate "by speaking with and scheduling witnesses, obtaining written statements, and otherwise helping [her] prepare evidence for presentation at the DHO's hearing." *Id.* § 541.8(d)(2). If the staff representative is unavailable "for the scheduled hearing, [the inmate] may either select another staff representative, request the hearing be postponed for a reasonable amount of time until [her] staff representative can appear, or proceed without a staff representative." *Id.* § 541.8(d)(3). Here, Petitioner contends that her staff representative refused to investigate on her behalf at all; and the DHO refused to continue the hearing to afford her more time to investigate on her own. (Doc. 1 at 11). She also states that the staff representative falsely informed the DHO "that Petitioner did not intend or want to call witnesses on her behalf," which Petitioner later disputed to the DHO (to no avail) "because it did not accurately reflect her requests and wishes." *Id.* at 11–12.

"[D]ue process d[oes] not require that the prisoner be appointed a lay advocate, unless 'an illiterate inmate is involved ... or where the complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case.' " *Miller v. Duckworth*, 963 F.2d 1002, 1004 (7th Cir. 1992) (quoting *Wolff*, 418 U.S. at 570); *see Wilson-El v. Finnan*, 263 Fed. Appx. 503, 506 (7th Cir. 2008). Here, while Petitioner makes claims she initially called Dr. Robert McGarvey to serve as her witness and to testify regarding her state of mind, there is no evidence in the record that Petitioner is illiterate.

Additionally, while Petitioner argues that she was prohibited from identifying or investigating the case for witnesses in light of her being in SHU, she makes no allegations that this case was so complex that a representative was required for an adequate comprehension.

Based on the record, the Court believes the initial DHO hearing held on December 19, 2018, was deficient because the record did not indicate why Petitioner's requested witness, Dr. McGarvey, did not appear. The Supreme Court of the United States has stated that in prison disciplinary hearings, prison officials must explain, at some time in the administrative record, why certain witnesses were not allowed to testify during the disciplinary hearing. *Ponte v. Real*, 471 U.S. 491, 497, 105 S. Ct. 2192, 2196, 85 L. Ed. 2d 553 (1985) ("the prison officials may choose to explain their decision [why witnesses were not allowed to testify] at the hearing, or they may choose to explain it 'later.'").

Upon an appeal of the initial DHO proceeding by Petitioner, the Regional Director recognized this deficiency and remanded the proceedings in light of the prison's failure to provide a reason that Dr. McGarvey was not brought to testify at the initial DHO hearing. At the remand, Petitioner was again given a chance to name a staff representative and stated she did not wish to have witnesses. However, she refused to sign this Notice of Discipline Hearing. Petitioner states this is incorrect as Mr. Ray indicated in the DHO report he was directed to get witness statement. Mr. Ray indicated that Petitioner did not know the name of the witness nor other identifiable information. Thus, the Court finds that Mr. Ray's statement indicates that Petitioner did request a witness to be present.

The Supreme Court recognizes that the right to call witnesses is a limited one. This right is subject to a number of qualifications, and prison officials are granted great deal of leeway in addressing inmates' requests for witnesses so long as reasons for denying witness request are

logically related to preventing undue hazards to institutional safety or correctional goals. *Whitlock v. Johnson*, 153 F.3d 380, 386 (7th Cir. 1998) (citing *Ponte*, 471 U.S. at 497, 105 S.Ct. 2192, 85 L.Ed.2d 553. Prison officials have broad discretion to refuse to call witnesses when the projected testimony is irrelevant to the matter in controversy, is unnecessary, or creates a hazard to institutional safety or correctional goals. *Wolff*, 418 U.S. at 566, 94 S.Ct. at 2979-80. Several circuits, including the Seventh Circuit Court of Appeals have stated that the Supreme Court requires a "case-by-case determination of the propriety of an inmate's request for witnesses." *Whitlock*, 471 U.S. at 386.

The prison states that Petitioner did not provide the name of the witness to the incident. Petitioner states that she was prevented from conducting any investigation, or asking other inmates who may have been present because she was in the SHU or solitary confinement for 24 hours a day. Based off the review of the record, the Court finds that due process was met. The record disputes Petitioner's contention that she was not able to interview witnesses present. Here, an incarcerated individual stated she witnessed Petitioner asking a correctional officer what he remembers of the incident. (*See* Doc. 11, Ex, 1, Att. H, Page 11). Additionally, Petitioner's statement also disputes this fact. Petitioner's statement in appeal states

> "I asked M. Killeen if he could interview the two orderlies that were working on the 400 range, and the inmates that were locked in the cells on the 400 range the day of the incident. I didn't know their names, but I note that some had moved to other ranges. Killeen went to get a ledger. He said he can't find them. I said well SENTRY has that info. Backdated. He said he didn't have access to that. He said the other officers said everyone was on Range."

Doc. 11, Ex. 1, Att. G, p. 1. Due process does not require staff representatives, officers, or prison officials to investigate witnesses. The right to call witnesses in a disciplinary proceeding is a limited one and prison officials must be given wide latitude in conducting prison disciplinary proceedings. Additionally, a prison disciplinary sanction is "not comparable to a criminal

conviction," *see Hill*, 472 U.S. at 456, and the constitutionally required procedures for imposing such a sanction are not as exacting as those applicable to a conviction. *See Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974).

The Court is sympathetic to Petitioner's concerns as a transgender person[1] and the fact she was new to the institution and, therefore, unable to name the names of individuals present. Further, her issue being able to investigate was compounded by the fact she was in the SHU. However, the due process requirements do not require this Court oversee and question the prison's classifications systems. Such a classification system is central to institutional safety. *Brown v. Frey*, 889 F.2d 159, 167 (8th Cir. 1989) ("The deference accorded prison officials limits Brown's clearly established right to call witnesses by giving them broad discretion to reject an inmate's request for institutional security reasons, to prevent the undermining of prison authority, to foster correctional goals, to exclude irrelevant or unnecessary testimony, or testimony which could create a risk of reprisal. A less flexible rule would interfere with the administration of prisons and would be untenable as a constitutional matter.") (cleaned up).

Finally, Petitioner argues that the DHO erred by not inquiring into her mental competency. "If evidence indicates that [an inmate] cannot understand the nature of the disciplinary proceedings, or cannot help in [her] defense, disciplinary proceedings may be postponed until [she is] competent to participate." 28 U.S.C. § 541.6(a). The DHO "will make this decision based on evidence, including evidence presented by mental health staff." *Id.* § 541.6(b). In this case,

---

[1] Petitioner spends much of her petition and reply to discuss her gender dysmorphia as a transgender individual. Gender dysphoria is a serious medical condition characterized by "mental distress stemming from strong feelings of incongruity between one's anatomy and one's gender identity." *Campbell v. Kallas*, 936 F.3d 536, 538 (7th Cir. 2019) (citing AM. PSYCHIATRIC ASS'N, DIAGNOSTIC & STATISTICAL MANUAL OF MENTAL DISORDERS 451 (5th ed. 2013)). The Court is clear – nothing in this order disputes that gender dysmorphia, especially for an incarcerated individual, causes anxiety, depression, panic attacks, and other serious psychological and physical symptoms. *See Iglesias v. Fed. Bureau of Prisons*, No. 19-CV-415-NJR, 2021 WL 6112790, at *2 (S.D. Ill. Dec. 27, 2021), modified, No. 19-CV-415-NJR, 2022 WL 1136629 (S.D. Ill. Apr. 18, 2022).

Petitioner suggests that she suffers from gender dysmorphia and general mental instability due to extended time spent in solitary confinement. (Doc. 1 at 13–19). Respondent argues that nowhere in the record Petitioner raised her mental capacity as an issue and that she did not raise the issue before the DHO. The Court disagrees. The record has many references that Petitioner requested to be examined for her gender dysmorphia. In fact, this incident stemmed from the fact Petitioner was requesting under garments consistent with her gender identity. *See generally* Doc. 11, Ex. 1, Att. F, page 2. Additionally, Petitioner requested Dr. McGarvey to testify regarding her state of mind. (Doc. 11, Ex. 1, Att. F, page 8).

However, due process requires inmates receive the opportunity to call witnesses, which, as the Court evaluated above, was not given in Petitioner's first DHO hearing. Therefore, it was properly remanded. However, at the second DHO hearing, Petitioner requested witnesses to testify regarding the incident, and not his state of mind. However, a failure to provide a competency evaluation, is not a violation of the due process requirements laid out above. However, even if mental competency conferred minimal constitutional requirements, the Court finds that Petitioner's gender dysmorphia and any psychological issues were not a concern at the DHO hearing. Petitioner did not reference her state of mind or mental health during the DHO hearing. Therefore, the Court cannot say that Petitioner was wrongfully and constitutionally denied due process for failure to have a mental health competency evaluation. *Marshall v. Oliver*, No. 14-CV-03184-LTB, 2015 WL 4743186, at *6 (D. Colo. Aug. 11, 2015), aff'd, 644 F. App'x 839 (10th Cir. 2016) ("The mere fact that Applicant stated he committed the offense because he was under psychological distress does not, by itself, give rise to the appearance that he is mentally ill. The record is devoid of any evidence that would lead any staff member to believe he was mentally ill. As such, no psychological exam was required.").

## IV.    Conclusion

The Court finds the DHO's decision is supported by "some evidence" and that Petitioner's disciplinary hearing satisfied due process requirements.

The Court hereby:

- **GRANTS** Petitioner's Motion for Status (Doc. 32)

- **DENIES** Petitioner's motion pursuant to 28 U.S.C. § 2241 for Writ of Habeas Corpus (Doc. 1)

- **DIRECTS** the Clerk of Court to enter judgment accordingly.

**IT IS SO ORDERED.**
**Dated: July 5, 2022**

**/s/  J. Phil Gilbert**
**J. PHIL GILBERT**
**DISTRICT JUDGE**